IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RENE COOKSEY,** : | |
| **Plaintiff** : | |
| : | **CIVIL ACTION NO. 1:00-CV-0081** |
| **v.** : | |
| : | **(Judge Kane)** |
| **DEAN FOSTER, PATRICIA SMITH,** : | |
| **ROBERT RAPAK, JOSEPH** : | |
| **ZIMMERMAN, and CITY OF** : | |
| **HARRISBURG,** : | |
| **Defendants** : | |
| : | |

**MEMORANDUM AND ORDER**

Before the Court is Defendants' motion for summary judgment, re-briefed on the issue of qualified immunity. For the reasons discussed below, the motion will be granted in part and denied in part.

**I.   FACTS**

Plaintiff Rene Cooksey was terminated from employment as a police dispatcher for the City of Harrisburg on October 6, 1997, after she allegedly released confidential police information to William Marks. On May 7, 1998, Plaintiff was criminally charged with hindering apprehension in violation of Pennsylvania law. See 18 Pa. Cons Stat. Ann. § 5105(a)(4). The charge was withdrawn later that year. The events leading up to Plaintiff's termination and arrest form the basis for her civil complaint against the City of Harrisburg, Patricia Smith, Joseph Zimmerman, Dean Foster, and Robert Rapak. Summary judgment was previously granted for Defendants City of Harrisburg and Patricia Smith (Doc. No. 51). The remaining Defendants were all Harrisburg police officers at the relevant times and have moved for summary judgment on all of Plaintiff's

claims. The following is a recitation of the facts in the light most favorable to Plaintiff.

Defendant Foster was the lead detective assigned to investigate a murder that took place in Harrisburg in June of 1996. In January of 1997, Stephen Blackstone, a prison inmate, told police that William Marks was involved in the homicide. Foster entered the information about Blackstone's statement into the police computer system on November 8, 1997. On March 28, 1997, using the pseudonym "Drama," Marks wrote Blackstone a letter admonishing Blackstone for implicating him and referencing 1-23-97, the date police say Blackstone reported Marks's involvement in the murder.

In September of 1997, Foster attended a federal proffer with Marks, who was incarcerated on unrelated charges at that time. Defendants allege that at the proffer, Marks told Foster that Plaintiff was his cousin, that she had discussed police investigations with him, and that he knew that individuals had implicated him in the 1996 homicide. Foster wrote his findings in a report which was later circulated to co-Defendants Zimmerman and Rapak. Plaintiff has submitted an affidavit by Marks swearing that he never made these statements to Foster.

Defendant Rapak conducted a computer log investigation which revealed that on March 26, 1997, two computer access codes were used to access Marks's criminal file. One code was Plaintiff's and the other was that of another employee, Paul Corbett, who was white. It is unclear what information was available in the file at that time; however, the parties agree that Plaintiff did not have electronic access to the supplemental police report detailing Blackstone's incriminating statement or the actual police files.

On the basis of all of this information, Rapak investigated whether Plaintiff released confidential information, concluded that she had, and recommended that she be terminated.

Defendant Zimmerman investigated the criminal charges against Plaintiff, which included reviewing Foster's report, the letter from Marks to Blackstone, and the computer log search. Zimmerman also interviewed Marks in prison, where Marks allegedly told him that with the right arrangements, he would provide verifiable information about Plaintiff's release of information (in his affidavit, Marks also denies ever saying this). Zimmerman also interviewed Blackstone, who reportedly said that he was present at a meeting between Plaintiff and Marks, that Plaintiff would return pages from Marks, and that Plaintiff would regularly provide Marks with police investigative materials, which he had in the past passed on to Blackstone. Zimmerman reports that Blackstone picked Plaintiff's picture out of a photo line-up. Based on the foregoing, Zimmerman wrote the probable cause affidavit used to charge Plaintiff and signed the criminal complaint against her.

In her civil complaint, Plaintiff alleges that these Defendants terminated her and filed criminal charges against her even though the allegations were false and they knew or should have known that they were false. She further alleges that one or more of these Defendants discriminated against her on the basis of her race, African-American, and did not treat her the same as similarly situated white employees. These allegations form the basis of Plaintiff's civil rights claim brought pursuant to 42 U.S.C. § 1983 and her state law claim of malicious prosecution.

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

3

R. Civ. P. 56. A factual dispute is material if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 249. The nonmoving party receives the benefit of all reasonable inferences. Sempier v. Johnson and Higgins, 45 F.3d 724, 727 (3d Cir. 1995).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint. Instead, [it] must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Id. at 322.

### III. DISCUSSION

Defendants have moved for summary judgment on all of Plaintiff's claims, arguing that qualified immunity protects them from liability on the federal claims, and official immunity shields them from her state law claim. Defendants further argue that they had probable cause to arrest Plaintiff, thus defeating the malicious prosecution claim. Plaintiff opposes the motion, asserting that the probable cause affidavit relied on falsehoods and that Defendants violated her clearly established constitutional rights.

#### A.   Section 1983 Claims

Plaintiff has brought two § 1983 claims against Defendants. First, she claims that

Defendants submitted a false probable cause affidavit in order to obtain an arrest warrant, violating her fourth amendment right to be free from unreasonable seizure. Next, she claims that Defendants initiated criminal charges against her and terminated her employment on the basis of her race, violating her fourteenth amendment equal protection rights. Defendants maintain that they are entitled to qualified immunity for both of these claims.

The doctrine of qualified immunity protects police officers performing discretionary functions, such as arrests. See Wilson v. Layne, 526 U.S. 603 (1999). Qualified immunity generally shields government officials from liability for civil damages, so long as the officials' "conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether qualified immunity applies, the Court considers: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so, (2) whether the right was clearly established at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 200 (2001); Eddy v. Virgin Islands Water and Power Auth., 256 F.3d 204, 208 (3d Cir. 2001). This analysis must occur for each individual defendant based on his particular conduct. Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996). All allegations must be viewed in a light most favorable to Plaintiff. Saucier, 533 U.S. at 201.

In determining whether a police officer is entitled to qualified immunity, both the existence of a clearly established right and the objective reasonableness of the officers' actions are questions of law for the Court to decide. Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997); see also Wilson, 526 U.S. 603. There is an issue for the jury "[o]nly if the historical facts material to the latter issue are in dispute . . . ." Sharrar, 128 F.3d at 828.

A right is clearly established if "its outlines are sufficiently clear that a reasonable officer would understand that his actions violate the right." Sterling v. Borough of Minersville, 232 F.3d 190, 193 (3d Cir. 2000). Therefore, this Court must "determine first whether the plaintiff has alleged a deprivation of a constitutional right at all, before reaching the question of whether the right was clearly established at the time." United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 398-99 (3d Cir. 2003) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 251 (2d Cir. 2001)). To answer this question, the Court must first determine the appropriate legal standards to apply to Plaintiff's claims.

### 1. Fourth Amendment Claim

Where an arrest is made pursuant to a warrant, the "Fourth Amendment requires that arrest warrants be based 'upon probable cause, supported by [o]ath or affirmation.'" Kalina v. Fletcher, 522 U.S. 118, 129 (1997) (quoting U.S. Const. amend. IV). Thus, to maintain a claim for unlawful arrest under § 1983, a plaintiff must prove that he or she was arrested by a state actor without probable cause. Sharrar, 128 F.3d at 817-18. The Third Circuit has defined probable cause as follows:

> Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. Rather probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.

Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). "This standard is meant to safeguard citizens from rash and unreasonable interferences with [their liberty and] privacy and to provide leeway for enforcing the law in the community's protection." Sharrar, 128 F.3d at 817-

18.

In order to prevail on a claim for fourth amendment seizure, Plaintiff must satisfy the test "enunciated in Franks v. Delaware, which requires a showing that the maker of the affidavit either stated a deliberate falsehood or acted with a reckless disregard for the truth.  Proof of negligence or innocent mistake is insufficient." Lippay v. Christos, 996 F.2d 1490, 1501 (3d Cir. 1993) (citing Franks v. Delaware, 438 U.S. 154, 171 (1978)).  Plaintiff must also demonstrate that the false statements were material to the finding of probable cause.  Franks, 438 U.S. at 155-56.  The statements are material if the false material is set aside and the facts remaining in the affidavit are insufficient to establish probable cause.  Id.

Police officers "who reasonably but mistakenly conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity." Sharrar, 128 F.3d at 826 (quoting Hunter, 502 U.S. at 227) (additional citations omitted).  "In this way, the qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Sharrar, 128 F.3d at 826 (quoting Hunter, 502 U.S. at 229).

    **2.  Fourteenth Amendment Claim**

The Equal Protection Clause commands that no state shall "deny any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "Preferring members of any one group for no reason other than race . . . is discrimination for its own sake" and is forbidden by the Fourteenth Amendment.  Regents of the Univ. of Cal. v. Bakke, 438 U.S. 265, 306 (1978).

To prevail on her claim that she was terminated and criminally charged on the basis of her

race in violation of § 1983, Plaintiff must allege that Defendants' actions violated a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). To demonstrate a constitutional violation here, Plaintiff must establish a prima facie case of discrimination under the Equal Protection Clause, which entails proving that she was a member of a protected class and that she received different treatment than that received by other similarly-situated individuals. See Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992). In other words, she must prove the existence of purposeful discrimination. Id.; see also Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989) (liability under § 1983 is premised on intentional discrimination).

If Plaintiff is able to make a prima facie case of intentional discrimination, Defendants can defeat liability by proving that they would have brought criminal charges and/or terminated her regardless of the racial bias. See Texas v. Lesage, 528 U.S. 18, 20-21 (1999) (considering a § 1983 Fourteenth Amendment Equal Protection claim). "[E]ven if the government had considered an impermissible criterion in making a decision adverse to the plaintiff, it can nonetheless defeat liability by demonstrating that it would have made the same decision absent the forbidden consideration." Id.

Although Plaintiff did not bring a Title VII claim, her employment-based discrimination claim is not preempted. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1079 (3d Cir. 1990); see also Alexander v. Gardner-Denver Co., 415 U.S. 36, 48-49 (1974) ("Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination.").

### 3. Qualified Immunity Analysis

Plaintiff brings a claim of unlawful arrest in violation of her fourth amendment rights. Specifically, she alleges that Defendants submitted a false affidavit in order to obtain an arrest warrant for a crime she did not commit. Plaintiff also brings a constitutional claim for violation of her fourteenth amendment equal protection rights, alleging that Defendants initiated criminal charges and terminated her on the basis of her race. On their face, these claims allege a violation of her constitutional rights under the framework discussed above. However, the Court must examine whether Plaintiff has alleged specific facts to state a claim for unlawful arrest and discrimination against each Defendant individually. See Grant, 98 F.3d at 122.

#### a. *Zimmerman*

Plaintiff alleges that Zimmerman violated her constitutional rights by authoring a probable cause affidavit and criminal complaint based upon information he knew was false. She further alleges that Zimmerman's actions of bringing the criminal charges on false grounds was motivated by racial discrimination, in violation of her fourteenth amendment right to equal protection under the law.

Whether a police officer who applied for an arrest warrant is protected by qualified immunity from liability under § 1983 depends upon the content of the warrant itself. "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." Malley v. Briggs, 475 U.S. 335, 344-45 (1986) (citing United States v. Leon, 468 U.S. 897, 923 (1984)); see also Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) (citing Malley and stating that police officer is entitled to qualified immunity where grounds for probable cause stated in warrant application

were objectively reasonable). "[T]he standard for determining the reasonableness of an official's belief in the existence of probable cause is whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the warrant under the conditions." Orsatti, 71 F.3d at 483 (citing Malley, 475 U.S. at 345).

Here, this determination must be done in the context of a Franks analysis, so that if the affidavit contains falsehoods made deliberately or with a reckless disregard for the truth and those falsehoods are stricken, the remaining affidavit is used for the qualified immunity analysis. See Franks, 438 U.S. 155-56; Lippay, 996 F.2d at 1501. Thus, the question becomes whether a "reasonably well-trained officer would have known" that the altered affidavit "failed to establish probable cause" or that seeking the warrant regardless of the defect was objectively reasonable. Orsatti, 71 F.3d at 483. If Plaintiff proffers evidence that Zimmerman recklessly disregarded the truth in his warrant application, this Court could consider whether "a warrant application based on what [the defendant] should have told the judge would have lacked probable cause." Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). This Court has already held that without the statements that Plaintiff alleges were false, the probable cause affidavit cannot stand alone. (See Doc. No. 51, November 27, 2001 Mem. & Order).

In the instant case, Zimmerman signed the probable cause affidavit which precipitated Plaintiff's arrest. The affidavit, Plaintiff alleges, stated false facts, and Zimmerman either knew of the falsity or recklessly disregarded the truth and therefore, Plaintiff argues, he lacked legal grounds to charge Plaintiff. Zimmerman took steps to verify Foster's report before he submitted the affidavit, including confirming the existence of the proffer with Marks, interviewing Marks

10

and Blackstone in prison, and reviewing Rapak's investigation. Under Defendants' version of the facts, Zimmerman had sufficient outside confirmation of Foster's report to support a reasonable belief that his affidavit established probable cause. However, utilizing Plaintiff's allegations, as this Court must, Saucier, 533 U.S. at 201, Zimmerman included information he knew to be false and/or testified falsely regarding his knowledge of the events. A reasonable officer under these circumstances would know that such an affidavit lacked probable cause and could not "have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." Sharrar, 128 F.3d at 827. Accordingly, qualified immunity is not available for Zimmerman for Plaintiff's fourth amendment claim.

Plaintiff has also alleged that Zimmerman's filing of allegedly false criminal charges was discriminatory. She has not alleged that she was treated differently than similarly situated individuals outside of her protected class, African-American, as required. See Keenan, 983 F.2d at 465. Furthermore, she has not pointed to evidence of record to support her claim. See Orsatti, 71 F.3d at 484 (citing Celotex, 477 U.S. at 322). "Conclusory allegations of racial bias do not establish discriminatory intent." Coleman v. State of N.J. Div. of Youth and Family Servs., 246 F. Supp. 2d 384, 390 (D.N.J. 2003) (citing Flagg v. Control Data, 806 F. Supp. 1218, 1223 (E.D. Pa. 1992)). Plaintiff has therefore not alleged a violation of a constitutional right. See Saucier, 533 U.S. at 200. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002). Accordingly, Zimmerman is protected by qualified immunity for Plaintiff's fourteenth amendment claim.

### b. Foster

Plaintiff alleges that Foster violated her constitutional rights by providing false information

regarding Marks's statements to him at the federal proffer, although he knew it was false and that it would form the basis of the probable cause affidavit and contribute to Plaintiff's termination. Foster electronically filed the confidential information which Plaintiff was supposed to have released to Marks one month after her termination; therefore, according to Plaintiff, he should have known that any assertion that Plaintiff had released the information was false.

"It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination." United States v. Leon, 468 U.S. 897, 923 (1984) (made applicable to § 1983 claims by Malley, 475 U.S. 335). According to Plaintiff, and supported by the Marks affidavit, Foster falsely reported that Marks implicated Plaintiff or even disclosed a relationship between them. Furthermore, there is evidence of record that shows Plaintiff could not have accessed the report she was alleged to have released to Marks, and Foster knew that his allegations were therefore impossible. As an officer who provided "information material to the probable-cause determination," Leon, 468 U.S. at 923, allegedly knowing it was false and would incriminate Plaintiff, the foregoing analysis pertaining to Zimmerman applies with equal force to Foster. See Sharrar, 128 F.3d at 827. Accordingly, Foster's actions cannot be shielded by qualified immunity with respect to Plaintiff's fourth amendment claim.

Similarly, while Plaintiff has alleged a racially discriminatory bias for Foster's actions, she has not sufficiently alleged purposeful discrimination in filing the criminal complaint to allege an equal protection violation for qualified immunity purposes. See Keenan, 983 F.2d at 465; Curley, 298 F.3d at 277. Furthermore, Plaintiff has not alleged any personal involvement of Foster relating to her termination. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A

defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior"). Therefore, Foster will be granted qualified immunity on Plaintiff's fourteenth amendment claim.

### c.     *Rapak*

Plaintiff alleges that Rapak's recommendation to terminate her was motivated by racial bias because he knew that two employees had accessed the Marks file but failed to fully report that information.  Moreover, both employees denied accessing the file, but Rapak believed Corbett and not Plaintiff.  Plaintiff alleges that Rapak believed Corbett because he is white.  Plaintiff further alleges that Rapak failed to properly investigate the charges against her and acquiesced in her improper arrest.  Rapak contributed to the allegedly false probable cause affidavit by providing the computer log search results, knowing they would be used to criminally charge Plaintiff, despite his knowledge that Plaintiff could not have accessed the file at issue.  Furthermore, when he provided the information for the affidavit, he failed to inform Zimmerman that Plaintiff was not the only employee whose pass code was used to electronically access the Marks file.  All of these actions, argues Plaintiff, constitute a violation of her constitutional rights.

Taking the fourth amendment claim first, Plaintiff does not allege that Rapak provided fabricated computer results, only that he failed to disclose all of the information known to him.  This Court cannot find any authority to support the proposition that this in itself constitutes a violation of a constitutional right.  Furthermore, even if it did and the Court considered "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," Saucier, 533 U.S. at 195, the Court cannot say that the right was clearly established at the time of Rapak's actions.  See Malley v. Briggs, 475 U.S. 335, 343 (1986) (stating that the

Harlow v. Fitzgerald, 457 U.S. 800 (1982) standard of objective reasonableness for qualified immunity "gives ample room for mistaken judgments"). Accordingly, Rapak will be given qualified immunity as to Plaintiff's fourth amendment claim.

In support of her fourteenth amendment claim, Plaintiff has proffered evidence that she was treated differently from individuals outside her protected class. She references two incidents where white employees accessed and released confidential police information and were not terminated. (Pl. Compl., Doc. No. 4 at ¶¶ 35-39). Furthermore, she alleges that Rapak, confronted with two employees whose electronic codes had accessed the Marks file, both of whom denied accessing the file, credited the white employee's story over Plaintiff's because of her race. Thus, Plaintiff has sufficiently alleged that Rapak violated her fourteenth amendment equal protection rights by recommending terminating her and not the other employees who had allegedly breached the department's confidentiality rules.

Therefore, the Court must consider whether a reasonable officer would have understood that his actions were prohibited under the "factual scenario established by the plaintiff." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, he is entitled to qualified immunity. If the requirements of the law would have been clear, the officer must stand trial." Id. at 136-37. Equal protection is a clearly established right and a reasonable officer would know that making employment decisions based on racial bias is unlawful. See, e.g., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a; Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. Accordingly, qualified immunity is not available to Defendant Rapak with respect to Plaintiff's fourteenth amendment

claim.

### B. Malicious Prosecution Claim

Defendants have not raised any defense of immunity for Plaintiff's state law claim of malicious prosecution; rather, they argue that Plaintiff cannot satisfy the elements of the claim. (See Def. Suppl. Reply Br., Doc. No. 56 at 2).

In determining the elements of the common law tort of malicious prosecution, the Court looks to the law of the forum, in this case, Pennsylvania. See Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993). Under Pennsylvania law, a cause of action for malicious prosecution has three elements: Defendants "must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff." Kelley v. General Teamsters, Chauffers, and Helpers, Local Union 249, 544 A.2d 940, 941 (Pa. 1988). "Malice has been defined as 'ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose.'" Lippay, 996 F.2d at 1502 (quoting Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988)). Malice may be inferred from the absence of probable cause. Griffiths v. CIGNA Corp., 988 F.2d 457, 463 (3d Cir. 1993), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586, 596 n.8 (3d Cir. 1995); Kelley, 544 A.2d at 941. "Probable cause is defined as a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." Hugee v. Pa. R.R. Co., 101 A.2d 740, 742 (Pa. 1954). "Probable cause does not depend on the state of the case in point of fact but upon the honest and reasonable belief of the party prosecuting." Miller v. Pa. R.R. Co., 89 A.2d 809, 811 (Pa. 1952).

Here, the charges against Plaintiff were withdrawn, which unquestionably qualifies as termination of the proceedings in her favor. <u>Haefner v. Burkey</u>, 626 A.2d 519, 521 (Pa. 1993); <u>see also</u> Restatement (Second) of Torts § 659(c) (manner of termination of proceedings includes abandonment of proceedings). Defendants maintain that they had probable cause to arrest her, which is an absolute defense against the claim. See <u>Meiksin v. Howard Hanna Co.</u>, 590 A.2d 1303 (Pa. Super. Ct. 1991). However, as discussed above, if Plaintiff's assertions are true and Defendants falsified material information in the probable cause affidavit, then there was not probable cause to arrest her, and malice can be inferred from these actions. Furthermore, even if a fourth amendment action cannot be sustained against Defendant Rapak, failure on that claim does not preclude this one. See <u>Lippay</u>, 996 F.2d at 1502-03. Accordingly, Defendants' motion for summary judgment on this claim will be denied.

## IV. ORDER

**AND NOW**, therefore, **IT IS ORDERED THAT** Defendants' motion for summary judgment (Doc. No. 27) is **GRANTED** in part as follows:

1. Plaintiff's claims for violation of her fourteenth amendment rights, brought pursuant to 42 U.S.C. § 1983, are **DISMISSED** against Defendants Zimmerman and Foster.

2. Plaintiff's claims for violation of her fourth amendment rights, brought pursuant to 42 U.S.C. § 1983, are **DISMISSED** against Defendant Rapak.

The remainder of Defendants' motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED THAT** a telephone status conference will be held on October 22, 2003 at 1:30 p.m. to set this matter for trial. Plaintiff's counsel shall initiate the call.

          S/ Yvette Kane
          Yvette Kane
          United States District Judge

Date:   September 30, 2003